UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LORILLARD TOBACCO CO.,**
a Delaware corporation,

      **Plaintiff,**

v.

**APPLEWOOD PARTY STORE, INC.,**
a Michigan corporation, d/b/a/ APPLEWOOD
LIQUOR STORE,

      **Defendant.**

      Case No. 05-CV-70913

      HONORABLE DENISE PAGE HOOD

_____/

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment on the Issue of Liability filed November 23, 2005. Defendant filed a Response and Affidavits on December 14, 2005 and Plaintiff filed a Reply on December 22, 2005.

**II.  STATEMENT OF FACTS**

Plaintiff, Lorillard Tobacco Co. [hereinafter "Lorillard"] manufactures and sells premium cigarettes in the United States. (Pl.'s Mot. at 2, Ex. 1 ¶2). Lorillard's leading brand, NEWPORT®, is the number one menthol brand in the United States and the second most popular cigarette brand overall. *Id.* Lorillard and its predecessor entities have used the NEWPORT® trademark continuously since at least 1956. (Pl.'s Mot. at 3, Ex.'s 3-7). Defendant, Applewood Party Store [hereinafter "Applewood"], has been in operation since 1993. (Pl.'s Mot. at 3, Ex. 2 at 11).

On March 4, 2005, Pedro Fuerte, Jr., a Lorillard Division Manager, visited Applewood to

inspect its inventory of NEWPORT® cigarettes.[1]  (Pl.'s Mot. at 3-4, Ex. 8).  While checking Defendant's inventory, Mr. Fuerte observed packs of NEWPORT® brand cigarettes that he suspected to be counterfeit.  (Pl.'s Mot. at 4, Ex. 8).  Mr. Fuerte removed seven packs of the suspected counterfeit produce and replaced them with genuine product.  (Pl.'s Mot. at 4, Ex. 9)

A subsequent inspection by Lorillard confirmed that the cigarettes taken from Applewood were counterfeit and were neither manufactured nor packaged by Lorillard.  (Pl.'s Mot. at 4, Ex. 10). Lorillard filed its Complaint for Damages and Injunctive Relief,[2] along with a Motion for Ex Parte Seizure Order, Temporary Restraining Order, Preliminary Injunction, and Order Accelerating Discovery.  This Court granted Lorillard's Motion for Ex Parte Seizure Order, which Lorillard executed on March 17, 2005.  At the seizure, Lorillard located seventy additional packages of counterfeit NEWPORT® cigarettes.  Subsequently, on March 28, 2005, the Court entered an Order for a Preliminary Injunction, Terminating the Protective Order and Exonerating Bond.

## III.  STANDARD OF REVIEW

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[1] Defendant claims that the inspection was in response to a consumer complaint regarding bad tasting NEWPORT® brand cigarettes.  (Def.'s Mot. at 3-4).  Plaintiff, however, takes issue with the fact that Mr. Fuerte did not disclose this alleged complaint during his visit to Applewood or in his resulting notes of the inspection. (Pl.'s Resp. at 11-12).  The Court takes note of this issue, but does not find that it is a central issue as to liability.

[2] Plaintiff alleged six counts in its Complaint: (i) trademark counterfeiting and infringement; (ii) federal unfair competition and false designations of origin and misleading representations; (iii) trademark dilution; (iv) common law unfair competition; (v) statutory unfair competition; and (vi) violation of Michigan Consumer Protection Act.

party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.    APPLICABLE LAW & ANALYSIS

Plaintiff requests summary judgment as to liability on each of its claims. As opposed to addressing each of Plaintiff's claims, Defendant points to deposition testimony and presents affidavits in an effort to demonstrate that there are material issues of fact. Defendant argues: (1) that Lorillard assumed responsibility for maintaining quality control of Lorillard cigarettes and Lorillard therefore should be estopped from asserting trademark infringement; and (2) Plaintiff cannot establish Applewood's "use" within the requirements of trademark law. (*See* Def.'s Resp.).

Defendant argues that Plaintiff assumed responsibility for quality control by allowing Applewood to participate in its "Buy-Down" rebate and its promotional display programs. The "Buy-Down" rebate program entails Lorillard representatives periodically visiting retail stores and rotating Lorillard cigarettes, replacing cigarettes if unsaleable, and rebating money for retails of Lorillard cigarette sales. (Def.'s Resp. at 5-6, Ex. D). For the promotional display program, Applewood permitted Lorillard to have specific space in a high visibility area at the store for displaying its product in exchange for payment to Applewood. (Def.'s Resp. at 6, Ex. D).

3

The Court finds that Defendant's abovementioned arguments do not demonstrate that Plaintiff assumed responsibility for quality control of Defendant's merchandise. Defendant has cited no case law to support these propositions, nor has Defendant sufficiently pled estoppel for purposes of a trademark infringement case. *See Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F.Supp.2d 944, 962 (W.D. Mich. 2004), (quoting *Kellogg Co.*, 209 F.3d at 569) (holding that to establish estoppel in a trademark infringement case, "the party asserting the defense must show affirmative misconduct or intentional silence 'amounting to a virtual abandonment of the trademark.'")

### A. Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114(1)

The Lanham Act imposes liability upon any person who shall, without the consent of the registrant:

> [u]se in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with such use that is likely to cause confusion, or to cause mistake or to deceive.

15 U.S.C. § 1114(1)(a). To establish a right to protection, Plaintiff must show: (1) ownership and continuous use of a specific trademark in connection with specific services; (2) secondary meaning if the mark is descriptive; and (3) a likelihood of confusion among customers resulting from defendant's use of its mark. *Comerica, Inc. v. Fifth Third Bankcorp*, 282 F.Supp.2d 557, 567 (E.D. Mich. 2002).

#### 1. Ownership and Continuous Use

"Trademark ownership arises from actual use in the market, and priority of ownership stems from priority of continuous use." *Homeowners Group, Inc. v. Home Marketing Specialists*, 931 F.2d 1100, 1105 (6th Cir. 1991). Defendant does not dispute that Lorillard's tradmarks have been

registered with the United States Patent and Trademark Office or that they have been used at least since 1956. (See Def.'s Mot. at 6, Ex.'s 1, 3-7). Accordingly, Lorillard has demonstrated ownership and continuous use.

### 2. Secondary Meaning if the Mark is Descriptive

Defendant contends, and the Court agrees, that the secondary meaning factor does not apply because Lorillard's marks are fanciful or arbitrary, not descriptive. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Secondary meaning is therefore not an issue in the instant case.

### 3. Likelihood of Confusion

The Sixth Circuit has established that the following factors are relevant in determining the likelihood of consumer confusion for trademark infringement: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 462, 468 (6th Cir. 1982). These factors are to be considered together and "imply no mathematical precision." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) ("*Wynn Oil I*"). A plaintiff need not show that all, or even most of the factors listed are present in any particular case to be significant. *Frich's Restaurants, Inc.* 670 F.2d at 1264. The ultimate question is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275 (6th Cir. 1997).

### a. Strength of the Trademark

The strength of a mark is a factor of the mark's distinctiveness and degree of recognition in the marketplace. *Comerica Inc.*, 282 F.Supp.2d at 569. "A mark is strong if its highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of a wide and intensive advertisement, or because of a combination of both." *Id.* (citing Callman, *Unfair Competition, Trademarks & Monopolies*, § 20.43 (4th Ed. 1983). "Likelihood of confusion increases with the strength of the mark." *Homeowners Group, Inc.*, 931 F.2d at 1107**.**

Plaintiff argues that the NEWPORT® trademark is strong, as evidenced by its continuous use since the 1950's and the substantial time, advertising, and marketing Lorillard has committed to developing consumer awareness and goodwill of its trademarks. (Pl.'s Mot. at 8). Defendant does not dispute the strength of Lorillard's trademarks. As such, the Court finds that there is no dispute that NEWPORT® is a strong and widely recognized mark.

### b. Relatedness of the Goods

Relatedness is the most important inquiry in determining the likelihood of confusion. *Comerica Inc.*, 282 F.Supp.2d at 570 (citing *Homeowners Group Inc.*, 931 F.2d at 1109). Plaintiff asserts that the types of goods in question are not only related, but identical. (Pl.'s Mot. at 8). Specifically, Plaintiff argues, "[b]oth Plaintiff and Defendant used the trademarks on cigarettes: Lorillard on legitimate and authentic products and Defendant on illegitimate and illegal products." *Id.* In *Comerica Inc.*, the court found this factor to weigh in favor of Comerica Inc. since Fifth Third BankCorp, the alleged infringer, offered a nearly identical service. *Id.* In the instant case, there is

no material issue that Plaintiff's and Defendant's goods are closely related.[3]

### c.     Similarity of the Marks

A finding of similarity of marks requires more than a side-by-side comparison of the two marks; rather the marks must be viewed in their entirety and in context, and a court must determine, in light of what occurs in the marketplace, whether the mark will be confusing to the public when singly presented. *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620 (6th Cir. 1998). Specifically, courts must determine whether a given mark would confuse the public when viewed alone, to account for the possibility that a sufficiently similar mark "may confuse consumers who did not have both marks before them, but who may have general, vague or even hazy impression of recollection of the other party's mark." *Daddy's Junky Stores, Inc.*, 109 F.3d at 283 (quoting *Wynn Oil I*, 839 F.2d at 1188).

Plaintiff argues that Defendant is using marks identical to the registered marks owned by Lorillard and there can be no question that the counterfeit marks are similar in appearance and would be confusing to the public when presented on identical types of products. (Pl.'s Mot. at 9). The Court will not go so far as to describe the goods found in Defendant's store as "identical," to genuine goods. However, the Court finds that given that the counterfeit goods found in Defendant's store were displayed alongside genuine product and were not discovered until the removal by Mr. Fuerte, there is no factual dispute that the goods are similar in appearance and therefore could be confused by consumers.

---

[3] The Court notes that Defendant does not dispute, nor address, the element of likelihood of confusion.

### d. Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn Oil*, 893 F.2d at 1188. Due to the difficulty in securing evidence of actual confusion, a lack of such evidence is rarely significant. *Daddy's Junky Stores, Inc.*, 109 F.3d at 284. Actual confusion "is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available." *Id.* (quoting *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 914 (Fed. Cir. 1984).

Plaintiff argues that, in light of the relatedness and the similarity of the counterfeit and the legitimate product and the side-by-side marketing of the products, there is a high likelihood of consumer confusion. (Pl.'s Mot. at 9). The Court finds that given the relatedness, similarity and side-by-side marketing of the product, Plaintiff has demonstrated a strong likelihood of consumer confusion.

### e. Marketing Channels Used

An analysis of marketing channels requires two considerations: "(1) whether the parties use the same means to market the product; and (2) whether the 'predominate customers' are the same." *General Motors Corp. v. Keystone Automotive Indus., Inc.*, 453 F.3d 351, 357 (6th Cir. 2006). Plaintiff points to the fact that Defendant has counterfeit cigarettes in its store and both parties sell their cigarettes to consumers in the United States. (Pl.'s Mot. at 9-10). Defendant retorts that Plaintiff has proffered no evidence that Defendant used Lorillard's marks in commerce. (Def.'s Resp. at 18).

It is not necessary for Plaintiff to prove that the marks are actually in the channel of commerce, but instead that the same marketing channels are used and that the customers are the

8

same. *See General Motors Corp.*, 453 F.3d 351. The Court finds that because the counterfeit cigarettes and the genuine cigarettes were being sold side-by-side in Defendant's store, this factor weighs in favor of consumer confusion.

### f. Likely Degree of Purchaser Care

The likely degree of purchaser care involves an assessment of the type of goods at issue and the level of sophistication of the purchaser. With respect to the type of goods at issue, "when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases' and there is accordingly less likelihood of confusion." *General Motors Corp.*, 453 F.3d 351 (quoting *Homeowners Group, Inc.*, 931 F.2d at 1111).

Plaintiff contends that the degree of care utilized by cigarette buyers is low. Although not pointing to any direct evidence, Plaintiff asserts that the typical buyer of cigarettes is neither sophisticated nor has particular expertise in cigarettes. (Pl.'s Mot. at 10). Moreover, as a result of the appearance and channel of distribution, the typical buyer of cigarettes simply purchases the product offered and assumes it to be authentic. *Id.*

The Court finds that, in relative terms, cigarettes are neither expensive nor unusual. The typical buyer therefore would not be likely to exercise great care in her purchases of such goods. *See Homeowners Group, Inc.*, 931 F.2d at 1111. Accordingly, the Court finds this factor weighs in favor of a greater likelihood of confusion.

### g. Defendant's Intent in Selecting its Mark

"Direct evidence of intentional copying is not necessary to prove intent." *Daddy's Junky Stores, Inc.*, 109 F.3d at 286 (citing *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir. 1991) ("*Wynn Oil II*"). Intentional infringement can be shown by circumstantial evidence.

*Comerica Inc.*, 282 F.Supp.2d at 574 (citing *Data Concepts, Inc.*, 150 F.3d at 626). "In determining a defendant's intent, 'actual or constructive knowledge' of the prior user's mark or dress may indicate bad faith. Where such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, we have upheld finding of bad faith." *Comerica Inc.*, 282 F.Supp.2d at 574 (quoting *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 966 F.2d 577, 586-87 (2nd Cir. 1993). However, it is not necessary for the registrant to prove intent to establish liability under this section [15 U.S.C. § 1114(1)(a)]" because "even dealers who unknowingly sell goods that bear an infringing mark are liable for trademark infringement." *Too, Inc. v. TJX Companies, Inc.*, 229 F.Supp.2d 825, 829 (S.D. Ohio 2002); *Lorillard Tobacco Co. v. Amoco & Food Shop 5, Inc.*, 360 F.Supp.2d 882, 885 (N.D. Ill. 2005).

Plaintiff argues that there is no justification for Defendant to sell cigarettes bearing counterfeit Lorillard trademarks other than a desire to exploit those marks and suggest an affiliation between Lorillard and the counterfeit products. (Pl.'s Mot. at 10-11). Defendant, on the other hand, asserts that it is not reasonable for the Court to infer that Applewood intentionally violated trademark laws and would "risk losing a regular Newport Kings customer by offering an inferior counterfeit product while still purchasing genuine Newports". (Def.'s Resp. at 15-18). Defendant further argues, "[w]hy would Applewood purchase counterfeit cigarettes purposely and relinquish its right to not receive a rebate of approximately $1.00 per pack? . . . It is simply not reasonable to infer that they would risk their investment and their sole income by engaging in offering counterfeit products for sale." *Id.*

There is no dispute that Defendant had knowledge of the NEWPORT® mark, as it sold NEWPORT® brand cigarettes at Applewood. *See Comerica Inc.*, 282 F.Supp.2d at 574. There are

also strong similarities between the cigarettes displayed at Applewood bearing counterfeit marks and those produced by Lorillard. These facts are circumstantial evidence of intentional infringement. *Id.* Although the Court does not find that, as a matter of law, there was intentional infringement of Plaintiff's trademarks, this does not preclude a finding of consumer confusion. *See Too, Inc.*, 229 F.Supp.2d at 829.

       **h.**  **Likelihood of Expansion of Product Lines**

Expansion of product lines is relevant where the goods of the parties are not identical but where they are somewhat related. *Jet, Inc. v. Sewage Aeration Systems*, 165 F.3d 419, 422 (6th Cir. 1999). In the instant case, both parties occupy the same field of cigarette sales. Accordingly, this factor is irrelevant. *See Comerica Inc.*, 282 F.Supp.2d 557.

As established above, Plaintiff has demonstrated there is also no material issue as to ownership and continuous use. The Court also finds that there is no factual dispute that Defendant's actions have created consumer confusion. As such, Plaintiff's Motion for Summary Judgment on the Issue of Liability as to its claim of Counterfeiting and Trademark Infringement under 15 U.S.C. § 1114(1) is granted.

  **B.**  **Federal Unfair Competition and False Designations of Origin and Misleading Representations, 15 U.S.C. § 1125(a)**

Plaintiff also seeks summary judgment as to liability with respect to its claims of unfair competition, false designations, descriptions and representations. *See* 15 U.S.C. § 1125(a). Section 43(a) of the Lanham Act imposes liability upon:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which- -
>   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the

11

> affiliation, connection or association of such person with another person, or as to origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

15 U.S.C. § 1125(a)(1)(A).  A claim for false designation of origin requires a showing that (1) the false designation has a substantial economic effect on interstate commerce; and (2) the false designation creates a likelihood of confusion. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).

Plaintiff asserts that Defendant's use of counterfeit Lorillard marks has a substantial economic effect on interstate commerce because Defendant is directly competing with Lorillard by selling and/or offering for sale counterfeit NEWPORT® cigarettes.  (Pl.'s Mot. at 12).  Plaintiff further relies on its previous arguments as to likelihood of confusion.

Defendant argues that because federal trademark statutes fail to define "use," it will rely on a Michigan trademark statute's definition of "used".[4]  Defendant contends that under the state statute's definition, Plaintiff has not demonstrated that Defendant "used" its marks or sold counterfeit goods for purposes of federal trademark infringement.

Defendant's arguments are misplaced.  Defendant has not presented the Court with a compelling argument as to why this state statute is relevant in interpreting this federal statute.  The Court further finds that because counterfeit products were being offered for sale at Defendant's establishment, in competition with authentic cigarettes, there is no factual dispute that the counterfeit cigarettes had an economic effect on interstate commerce.  Further, as discussed above, Plaintiff has demonstrated that Defendant's actions created consumer confusion.

### C.     Trademark Dilution, 15 U.S.C. § 1125(c)

---

[4] Defendant cites MCL 429.31, which provides: "A mark is "used" in this state on goods when it is placed in any manner on the goods or their containers or on the tags or labels affixed thereto such goods are sold or otherwise distributed in this state . . ."  MCL § 429.31(1)(h).

The Lanham Act also prohibits the "dilution" of famous marks.[5]  *See* 15 U.S.C. § 1125(c). For a Plaintiff to establish a federal claim of dilution: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 577 (6th Cir. 2000).  Further, direct evidence of dilution is not necessary if actual dilution can be reliably be proved through circumstantial evidence–the obvious case is one where the junior and senior marks are identical. *Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 434.

As discussed above, Plaintiff has established that its NEWPORT® trademark is both famous and distinctive and that the counterfeit cigarettes were being marketed in Defendant's store and were in commercial use.  Such commercial use occurred after the NEWPORT® trademark became famous, as they were found at Applewood in March, 2005.  *See Kellogg Co.*, 209 F.3d at 577.

With respect to the last element, which requires a showing that Defendant's mark dilutes the famous mark, Plaintiff relies on *Mosley* and argues that because Defendant is using marks identical to the registered marks, the final element is undisputable. (Pl.'s Mot. at 13-14).  The Court finds that the final element is established because the counterfeit marks were very similar and were used on similar goods.  *See Ford Motor Co. V. Lloyd Design Corp.*, 184 F.Supp.2d 665, 680 (E.D. Mich.

---

[5] 15 U.S.C. § 1125(c) provides: "The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection." Congress has defined "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods and services, regardless of the presence or absence of - (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127.

2002) (holding that "[t]he closer the junior user comes to the senior's area of commerce, the more likely it is that dilution will result from the use of a similar mark."); (Pl's Mot. at 4, Exh. 10). Defendant's use of the counterfeit mark dilutes the quality of Plaintiff's mark by diminishing the capacity of the mark to identify and distinguish goods. *Audi AG v. D'Amato*, 381 F.Supp.2d 644, 664-65 (E.D. Mich. 2005). Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on its trademark dilution claim.

### D.     State Law Claims

Plaintiff's state law claims include: (1) Michigan common law unfair competition; (2) statutory unfair competition, MCL § 429.42(a); and (3) Michigan Consumer Protection Act, MCL 445.903. Michigan's common law rule was codified in MCL § 429.42(a), which provides:

> [a]ny person who shall:
>
> (A) Use, without the consent of the registrant, any reproduction, counterfeit, copy or colorable imitation of a mark registered under this act in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cuase confusion or mistake or to deceive as to the source of origin of such goods or services . . . Is liable to a civil action by the owner of the registered mark for any or all of the remedies provided in section 13 . . .

MCL § 429.42(a). Further, the Michigan Consumer Protection Act prohibits "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." MCL § 445.903(1). "The applicable standard under the MCPA and under Michigan common law is the same as the tests for federal trademark infringement and federal unfair competition under 15 U.S.C. §§ 1114(1) and 1125(a): whether confusion is likely." *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F.Supp.2d 800, 807 (E.D. Mich. 2000) (citing *Homeowners Group*, 931 F.2d at 1105 n.1). Since the central inquiry of Plaintiff's claims under state law is consumer confusion, which Plaintiff has established, Plaintiff's Motion for Summary Judgment on the issue of liability

as to its state law claims is granted.

### E.  Willfulness

Under the Lanham Act, a plaintiff may elect to recover statutory damages, for certain circumstances, instead of actual damages.  Under the statute, the determination of whether defendant's use of the counterfeit mark was willful may become crucial to determining the amount of statutory damages the plaintiff is entitled to.  The statute provides:

> (c) Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of –
>
> > **(1)** not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, distributed, as the court considers just; or
> > **(2)** *if the court finds that the use of the counterfeit mark was willful*, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).  The statute does not define the term "willful."  The Sixth Circuit has defined "willful," under the Lanham Act, for purposes of determining when to award attorney's fees.  *Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998).  The Sixth Circuit held, "willful or bad faith infringement, so as to justify an award of attorney's fees, usually means passing off a product or service as another seller's better established one, or some other deliberate theft of a marketholder's goodwill."  *Id.* (internal quotations omitted), citing *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (Fed.Cir. 1990).  The First Circuit has also defined the meaning of willful conduct in the civil context.  *Thomsen v. U.S.*, 887 F.2d 12, 17 (1st Cir. 1989).  The First

Circuit held "in the civil context, willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks." *Id.* (internal citations omitted), quoting *Monday v. U.S.*, 421 F.2d 1210, 1215 (7th Cir. 1970).

Plaintiff argues that the Court should determine that Defendant willfully used a counterfeit mark as a matter of law. To support this contention, Plaintiff argues that Defendant's business dealings evidence that Defendant acted willfully or with a reckless disregard of Lorillard's trademarks. Specifically, Plaintiff argues: (1) the sheer volume of the counterfeit product found at Applewood during the March 17, 2005 seizure supports an inference that Defendant knew that it was purchasing, selling and/or offering for sale counterfeit NEWPORT® products;[6] (2) Defendant's business records demonstrate that there was a sharp decline in Defendant's purchase of NEWPORT® King cigarettes in the soft pack immediately prior to the time that counterfeit cigarettes were discovered. (Pl.'s Mot. at 17-18). Finally, Plaintiff contends that this conduct supports the inference that Defendant stopped purchasing Lorillard from a recognized wholesaler or other legitimate source and began purchasing product from an illegitimate source.

Defendant has an alternative explanation for the decline in the need for NEWPORT® King cigarettes - (1) that NEWPORT® King cigarettes in the soft pack was Applewood's lowest Lorillard seller; (2) the decline in the population in the area; (3) depressed economic factors in the geographic area; and (4) regular media coverage of health risks of cigarettes. (Def.'s Resp. at 16-17, Ex. C).

Upon review of the submitted evidence, it appears that there are some factual disputes as to willfulness. Plaintiff's evidence may *suggest* that Defendant's conduct was willful, however,

---

[6] Plaintiff further argues that the large amount of counterfeit product seized on March 17, 2005 also supports the inference "that Defendant was trafficking in significant quantities of counterfeit cigarettes on other dates when a seizure did not occur." (Pl.'s Mot. at 16).

16

Plaintiff has failed to show that Defendant knew the cigarettes were counterfeit or that Defendants sold the counterfeit cigarettes even after having knowledge that the cigarettes were counterfeit. Without such showing, at a minimum, the Court cannot determine that Defendants willfully used a counterfeit mark as a matter of law. As such, summary judgment is not appropriate.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment on the Issue of Liability **[Docket No. 33, filed November 23, 2005]** is GRANTED in part and DENIED in part.

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED as to liability and DENIED as to willfulness.

IT IS FURTHER ORDERED that a Status Conference is scheduled for November 27, 2006 at 2:30 p.m.

s/Denise Page Hood
United States District Judge

DATED:   October 11, 2006

**Proof of Service**

The undersigned certifies that a copy of the foregoing Memorandum Opinion and Order was served on the attorneys of record herein by electronic means or U.S. Mail on **October 11, 2006**.

s/Kim Grimes
Acting in the absence of
William Lewis, Case Manager